UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON ASSOCIATION OF ALCOHOLIC BEVERAGE PERMIT HOLDERS, *et al.*, | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION H-07-2503 |
| CITY OF HOUSTON, | § § § | |
| *Defendant*. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The parties came before the court on August 27, 2007, for a hearing regarding Plaintiffs' request for a preliminary injunction. After consideration of the pleadings, the briefs, and testimony at the hearing held on that date, the court denied Plaintiffs' motion.[1] Based upon the evidence adduced from the filings and at the hearing, the court makes the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a).[2]

**FINDINGS OF FACT**

1. Plaintiff Houston Association of Alcoholic Beverage Permit Holders ("Association") is comprised of approximately fifty bar owners in Houston, Texas. None of these members is classified as a "tobacco bar," or a "private club."

2. The Association was established exclusively for the purpose of challenging the City of Houston Ordinance No. 2006-1054, the ordinance at issue.

---

[1] Dkt. 25.

[2] To the extent that any finding of fact is more properly characterized as a conclusion of law, or vice versa, the court adopts it as such.

3. Defendant City of Houston, Texas, enacted and has the authority to enforce Ordinance No. 2006-1054, which amends Article IX of Chapter 21 of the Houston Code of Ordinances ("Ordinance").

4. Plaintiffs claim that the Texas Alcoholic Beverage Code preempts the City of Houston's attempts to regulate smoking in establishments with alcoholic beverage permits.

5. Plaintiffs also claim that several terms and provisions of the Ordinance are unconstitutionally vague, including: (1) "enclosed" and "enclosed area;" (2) "outdoor seating area;" (3) "private clubs" in the context of defining "bars" and "public places;" and (4) "specific invitation," "meeting facility," and "designated enclosed meeting areas" as they pertain to "private functions."

**TEXAS ALCOHOLIC BEVERAGE CODE**

6. The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State. TEX. CONST. art. XI, § 5.

7. Unless otherwise specifically provided by the terms of this code, the manufacture, sale, distribution, transportation, and possession of alcoholic beverages shall be governed exclusively by the provisions of this code. TEX. ALCO. BEV. CODE § 1.06

8. The commission shall supervise and regulate licensees and permittees and their places of business in matters affecting the public. This authority is not limited to matters specifically mentioned in this code. TEX. ALCO. BEV. CODE § 5.33

9. The commission may exercise all powers, duties, and functions conferred by this code, and all powers incidental, necessary, or convenient to the administration of this code. It shall inspect, supervise, and regulate every phase of the business of manufacturing, importing, exporting, transporting, storing, selling, advertising, labeling, and distributing alcoholic beverages, and the possession of alcoholic beverages for the purpose of sale or otherwise. It may prescribe and publish rules necessary to carry out the provisions of this code. TEX. ALCO. BEV. CODE § 5.31

10. Except as is expressly authorized by this code, a regulation, charter, or ordinance promulgated by a governmental entity of this state may not impose stricter standards on premises or businesses required to have a license or permit under this code than are imposed on similar premises or businesses that are not required to have such a license or permit. TEX. ALCO. BEV. CODE § 109.57(a).

11. It is the intent of the legislature that this code shall exclusively govern the regulation of alcoholic beverages in this state, and that except as permitted by this code, a governmental entity of this state may not discriminate against a business holding a license or permit under this code. TEX. ALCO. BEV. CODE § 109.57(b).

**CITY OF HOUSTON ORDINANCE 2006-1054**

12. The Ordinance, which is to become effective on September 1, 2007, bans smoking in public places, including bars, restaurants, and places of employment.

13. The preamble indicates that the Ordinance was enacted to "increase the number of indoor smoke-free areas to protect the public health and welfare," based in part on "recent surveys suggest[ing] that Houstonians desire an increase in the number of smoke-free areas."

Houston, Tex., Ordinance 2006-1054 art. IX, pmbl. (Oct. 18, 2006).

14. "Enclosed" is defined as any "reference to an area or a building or portion thereof [that is] closed in on all sides from floor to ceiling by solid walls, with or without windows and exclusive of doorways." Houston, Tex., Ordinance 2006-1054 art. IX, § 21-236 (Oct. 18, 2006).

15. "Meeting facilities" are primarily utilized for "private functions." Houston, Tex., Ordinance 2006-1054 art. IX, § 21-236 (Oct. 18, 2006).

16. "Private functions" are defined as "a means of gathering individuals for the purpose of deliberation, education, instruction, entertainment, amusement, or dining, where specific invitation is a prerequisite to entry and where the event is not intended to be open to the public." Houston, Tex., Ordinance 2006-1054 art. IX, § 21-236 (Oct. 18, 2006).

17. "Designated enclosed meeting areas" are those in "convention centers, hotels, motels, and other meeting facilities." Houston, Tex., Ordinance 2006-1054 art. IX, § 21-242(6) (Oct. 18, 2006).

18. "Bar" is defined to include "cabarets." Houston, Tex., Ordinance 2006-1054 art. IX, § 21-236 (Oct. 18, 2006).

**PRELIMINARY INJUNCTION**

19. The Texas Alcoholic Beverage Code regulates the sale and distribution of alcoholic beverages.

20. The Texas Alcoholic Beverage Code does not regulate, in any way, smoking in licensed establishments.

21. The Texas Alcoholic Beverage Commission issues various types of permits to sell and distribute alcoholic beverages, including mixed beverage and private club permits.

22. The Ordinance does not regulate the sale or distribution of alcohol.

23. Other municipal ordinances, such as the Health Code and the Fire Code, regulate secondary activities in establishments that are subject to the Texas Alcoholic Beverage Code.

24. Plaintiff bar owners and Association members testified to their awareness that the Ordinance applies to their establishments.

25. Multiple witnesses for Plaintiffs testified that they understood the meaning of the Ordinance as it applied to places of employment.

26. Plaintiffs' witness, a former major with the Texas Alcoholic Beverage Commission, interpreted the Ordinance to prohibit smoking in private clubs.

27. In October 2006, Mary Price—President of Crazy Frogs—testified in opposition to the Ordinance at multiple hearings.

28. Although the Ordinance was passed on October 18, 2006, Plaintiffs delayed filing suit until August 2, 2007.

29. At least one study, conducted on behalf of the City of Houston, suggests that indoor smoking bans do not result in significant adverse economic impact to businesses.

30. Customers of two bars without outdoor seating areas—Mugsy's and Crazy Frogs— have indicated to proprietors and staff that they will no longer patronize such bars. Based upon these comments, bar owners who cannot provide an outdoor seating area fear that they will lose revenue.

31. An employee of an Association member expressed concern that the Ordinance will cause her to lose income, and possibly employment, due to decreased patronage of the bar where she is employed.

32. After the Ordinance was enacted in October of 2006, at least one Plaintiff bar owner undertook efforts to build an outdoor seating area in order to comply with the Ordinance. He indicated that the cost of compliance could range from as low as $30,000 to over $350,000. This witness testified that he would proceed, over time, to build the outdoor seating area regardless of whether the preliminary injunction was granted.

33. Multiple witnesses for Plaintiffs testified that they would not be opposed to the Ordinance if a similar ban was imposed state-wide.

34. Plaintiffs' business appraiser testified that the value of a business is calculable in monetary terms.

35. Plaintiffs' business appraiser also testified that if a restaurant or bar is properly licensed, then it is marketable. Changes in marketability may not translate to changes in value.

36. Plaintiffs' business appraiser has observed an increase in the demand for bar properties with outdoor seating areas since the enactment of the Ordinance. The increased interest will not necessarily result in a corresponding increase in value. Further, bar properties that lack an outdoor seating area have not shown a demonstrable decrease in business value.

37. Businesses on the edge of the city limits may be more significantly impacted by the Ordinance than others that are more centrally located.

38. Plaintiffs' business appraiser did not observe a significant impact on the values of restaurants when the previous ordinance, affecting only restaurants, went into effect.

39. Numerous scientific peer-reviewed studies have established the deleterious effects of smoking and secondary smoke on human health. Examples of such effects include an increased likelihood of cardiovascular and coronary heart disease and lung cancer.

40. The citizens of Houston have demonstrated a desire to increase the number of smoke-free indoor areas.

41. Hospitality workers are at the highest risk for smoking and secondary smoke related illness and disease.

42. A significant portion of hospitality-industry workers are employed on a part-time basis.

43. The employers of part-time hospitality-industry workers generally do not provide healthcare benefits or contribute to the cost of maintaining healthcare coverage for these employees. Several of Plaintiffs' witnesses testified that they do not provide insurance benefits or contribute to the costs of maintaining health insurance for all of their employees. One of Plaintiffs' witnesses testified that her Association-member employer does not provide her with health insurance.

**CONCLUSIONS OF LAW**

1. The province of the court is not to determine whether a particular law is wise. "The Constitution does not . . . vest in this Court the authority to strike down laws because they do not meet our standards of desirable social policy, 'wisdom,' or 'common sense.'" *Pyler v. Doe*, 457 U.S. 202, 242 (1982) (Burger, C.J., dissenting).

2. A temporary injunction is an extraordinary remedy not imposed lightly by the court. *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Evergreen Presbyterian Ministries, Inc., v. Hood*, 235 F.3d 908, 918 (5th Cir. 2000).

3. It is the plaintiff's burden to show that: (1) they are substantially likely to prevail on the merits; (2) they will suffer irreparable harm; (3) the injunction will not disserve the public; and (4) the injury that the plaintiffs would suffer if the injunction were granted outweighs the harm to the defendants if the injunction is granted. *Evergreen*, 235 F.3d at 917.

4. While the court is sympathetic to the impact of the Ordinance on certain bars and bar employees, "[t]he government may enact reasonable legislation to promote the health, safety, and general welfare of its people." *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984).

5. Entities, businesses, and establishments which are likely to pose more harm to the public health, safety, or welfare may be more regulated than those which pose a lesser risk of harm. *See, e.g., New York v. Burger*, 482 U.S. 691, 718-19, 107 S. Ct. 2636 (1987) (discussing closely regulated industries like liquor, firearms, and mining).

6. "The United States Supreme Court has stated, 'government regulation—by definition—involves the adjustment of rights for the public good. Often this adjustment curtails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by purchase." *Andrus v. Allard*, 444 U.S. 51, 66 (1979).

**PREVAILING ON THE MERITS**

**A.     Preemption**

7. The court finds that plaintiffs failed to meet their burden to demonstrate a likelihood of success on the merits of their claim that the Ordinance is pre-empted by the Texas Alcoholic Beverage Code.

8. "[T]he mere fact that the legislature has enacted a law addressing a subject does not mean that the subject matter is completely preempted." *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17, 19 (Tex. 1990). "A general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *Id.* (quoting *City of Beaumont v. Fall*, 116 Tex. 314, 291 S.W. 202 (1927)); *see also City of Houston v. Reyes*, 527 S.W.2d 489, 494 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.)).

9. The Texas Alcoholic Beverage Code regulates only alcohol. Findings of Fact 6–11. Chapter 21, Article IX of the Code of Ordinances, entitled "Smoking," regulates only smoking. Finding of Fact 13.

10. Houston, Texas, is a home-rule city. "If the Legislature decides to preempt a subject matter normally within a home-rule city's broad powers, it must do so with unmistakable clarity." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002). Because the Texas Alcoholic Beverage Code fails to mention regulation of tobacco or smoking, the Ordinance is not preempted with "unmistakable clarity." Findings of Fact 20, 22.

11. Further, the City of Houston currently regulates bars and restaurants through other ordinances, including the Health Code and the Fire Code. Finding of Fact 23.

**B. Vagueness**

12. The court finds that plaintiffs failed to meet their burden to demonstrate a likelihood of success on the merits of their claim that the Ordinance is unconstitutionally vague.

13. The Ordinance was not effective at the time of the hearing, thus an "as-applied" challenge to the constitutionality of the Ordinance is not ripe. Finding of Fact 12.

14. Where, like here, an ordinance can carry a criminal penalty, the Fifth Circuit generally applies the two-part void-for-vagueness test enunciated in *City of Chicago v. Morales*. *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849 (1999)). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.*

15. In enacting an ordinance, "[i]mpossible standards of specificity are not required." *United States v. Castro-Vasquez*, 481 F. Supp. 2d 664, 671 (W.D. Tex. 2006).

16. However, because smoking is not considered constitutionally protected conduct, in order to survive a facial vagueness challenge, the ordinance must be "impermissibly vague in all of its applications." *Home Depot, Inc., v. Guste*, 77 F.2d 1063, 1065 (5th Cir. 1985).

17. The arguments before the court do not suggest that the terms that Plaintiffs challenge are beyond the understanding of the ordinary citizen. Several of Plaintiffs' witnesses testified to the clarity of the Ordinance as it applies to places of employment. Additionally, these same witnesses also indicated their understanding that the Ordinance applied to their establishments. Findings of Fact 24–26. The Ordinance is also clear in its exemptions, which include: private residences; certain hotel and motel rooms; and private and semiprivate rooms in nursing homes and long-term care facilities.

18. The terms "enclosed" and "enclosed area" are not impermissibly vague. The plain language of the terms, the context in which they are used, and the intent with which the Ordinance was enacted demonstrate that the terms are not impermissibly vague. In fact, the term "enclosed"

is explicitly defined within the statute, leaving little room for interpretation. Further, the definition of "enclosed" indicates that it pertains to areas, thus the term "enclosed area" is also not unconstitutionally vague. Finding of Fact 14.

19. The term "outdoor seating area" is not impermissibly vague.[3] Mere failure to explicitly define a term does not render an ordinance unconstitutionally vague. *Taverns for Tots, Inc., v. City of Toldeo*, 341 F. Supp. 2d 844, 856 (N.D. Ohio 2004). "Outdoor" has been commonly defined as "[l]ocated in, done in, or suited to the open air." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2004). As such, the ordinary citizen would likely conclude that an outdoor seating area would be one in which there are not solid floor-to-ceiling walls that would cause smoke to accumulate based upon the common definition of "outdoor," the definition of "enclosed," and the legislative intent to promote public health and welfare.

20. Although it may not be entirely clear whether private club permit holders are subject to the ban; whether the term "bar" encompasses private clubs; or whether the term "public places" includes private clubs, the Ordinance can nonetheless be upheld. The Ordinance does not mention private club permits or whether a private bar or private club is subject to the ban. When private facilities or establishments are mentioned in the Ordinance, it is generally for the purpose of exempting them from a prohibition. The omission of specific references to private clubs may indicate that the Houston City Council did not intend to exempt private

---

[3] Section 21-241 of the Ordinance expressly exempts bars and restaurants from the rule that smoking is not allowed within 25 feet of entrances and exits. Therefore, any argument regarding where the outdoor seating area must be placed is unavailing.

bars or clubs from the ban. Such a interpretation is consistent with the testimony of the former major with the Texas Alcoholic Beverage Commission—one of the plaintiffs' witnesses. Finding of Fact 26. Moreover, "[a]ny unconstitutional applications that may arise under this ordinance can easily be tested in the courts of Texas on an as-applied basis in the context of criminal proceedings initiated by the City." *Roark & Hardee L.P. v. City of Austin*, A-05-CA-837-SS, 2006 U.S. Dist. LEXIS 73911, at *20 n.8 (W.D. Tex. Oct. 4, 2006). Even if there is some uncertainty in the Ordinance, administrative guidance can save an otherwise vague enactment; therefore, the City of Houston could promulgate rules to clarify certain terms. *Id.* at *15–16.

21. "Specific invitation," "meeting facility," "designated enclosed meeting areas," and "private function" are not impermissibly vague. Based upon the definitions articulated in the Ordinance, their interrelationships, and the context in which they are utilized, smoking would likely be prohibited in the private areas of bars and cabarets. Per the Ordinance, "meeting facilities" are primarily utilized for "private functions," and private functions are defined as "a means of gathering individuals for the purpose of deliberation, education, instruction, entertainment, amusement, or dining, where specific invitation is a prerequisite to entry and where the event is not intended to be open to the public." Findings of Fact 15-17. Other courts have utilized a "common sense" approach to interpreting phrases involving "private" functions by focusing on the clear language of the enactment and ordinary meaning of the terms—that private would obviously mean the opposite of public. *Taverns for Tots, Inc., v. City of Toldeo*, 341 F. Supp. 2d 844, 857 (N.D. Ohio 2004). These courts focus on the exclusion of the general public. Bars and cabarets, however, are generally open to the public.

In the Ordinance at issue, "designated enclosed meeting areas" are those in "convention centers, hotels, motels, and other meeting facilities." In a comparative context, these examples are not consistent with VIP rooms of cabarets and bars, which are the specifically mentioned locations of concern to Plaintiffs. VIP rooms are a lesser-included area of a "bar," which is explicitly defined to include "cabarets." As such, smoking would be prohibited in these areas under the plain language of the statute. Once again, even if potential for uncertainty exists, the City of Houston can promulgate rules to provide guidance to its citizens.

22. Plaintiffs adduced no evidence to the effect that the statute is vague based on the potential for arbitrary enforcement.

23. In order for a facially vague ordinance to constitute a "regulatory taking," the mere enactment of the ordinance must deny the owner economically valuable use of his land.[4] *D.A.B.E. v. City of Toledo*, 393 F.3d 692, 695 (6th Cir. 2005). "Sustaining such a facial challenge is a 'heavy burden.'" *Id.* (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 501–02, 502 n.29 (1987)). Fear of losing customers as a result of the ordinance, "[e]ven if true, . . . [is] simply not enough" to satisfy the heavy burden of proof. *Id.* In fact, "[e]ven if the ordinance 'prevent[ed] the most profitable use of [appellants'] property,' that would not be enough to establish a taking." *Id.* at 696 n.1.

---

[4] Although the plaintiffs did not plead or argue that the Ordinance constituted an unconstitutional taking, a large majority of the evidence adduced at the hearing went to show that the Ordinance would create an unfair business advantage for some bars. Therefore, the court will at least briefly address the issue.

Case 4:07-cv-02503   Document 29   Filed in TXSD on 08/30/07   Page 14 of 16

**IRREPARABLE HARM**

24. The court finds that plaintiffs failed to meet their burden to show that allowing the Ordinance to take effect on September 1, 2007 would cause them irreparable harm as contemplated in the injunction inquiry.

25. Within the Fifth Circuit, "only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Authority of Fl. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

26. Although Plaintiffs knew of and appeared before Houston City Council in opposition to the Ordinance, Plaintiffs failed to file their suit challenging the Ordinance and seeking injunctive relief until nine months after its enactment. Findings of Fact 27–28. Plaintiffs' "failure to act sooner . . . suggests that there is, in fact, no irreparable injury." *Citibank v. CitiTrust*, 756 F.2d 273, 277 (2d Cir. 1977); *see also State of Texas v. Seatrain Int'l.*, 518 F.2d 175, 182 (5th Cir. 1975) (allowing a "faint shade of laches to fall on their cause").

27. Plaintiffs' anecdotal evidence and speculative concerns regarding the impact of the Ordinance on their businesses are insufficient to demonstrate irreparable harm and to overcome the studies conducted on behalf of the City of Houston. Findings of Fact 29–31. Even assuming the truth of Plaintiffs' predictions, speculative damages are insufficient to merit taking the extreme step of imposing an injunction. *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (refusing to award preliminary injunctions when the possibility of harm is remote); *see also Alexander v. City of Pearland*, 945 F. Supp. 1069, 1070 (S.D. Tex. 1996) (anticipatory harm, even when legitimate, is insufficient to establish irreparable

injury). In fact, the Plaintiffs' business appraiser testified that no demonstrable decrease in value has occurred in anticipation of the effective date of the Ordinance. Rather, he testified that a change in demand and marketability may not result in a corresponding change in business value. Findings of Fact 34–38.

28. The party seeking the injunction must demonstrate the inadequacy of monetary damages. Texas courts have found that the mere loss of customers is insufficient to demonstrate the inadequacy of monetary damages. *Millennium Restaurants Group, Inc., v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001).

29. Furthermore, Plaintiffs have not demonstrated the inability to calculate or measure their damages. To the contrary, Plaintiffs' business appraiser testified that values of businesses can be quantified in monetary figures. Finding of Fact 34.

**DISSERVICE TO PUBLIC & BALANCING OF HARMS**

30. The court finds that plaintiffs have failed to show that allowing the smoking ban to go into effect will disserve the public interest. However, the City of Houston, the American Cancer Society, and other amici have presented scientific research indicating that exposure to second hand smoke is harmful to human health and well-being. Finding of Fact 39.

31. The legislative intent in enacting the ordinance demonstrates a desire of the Houston City Council to promote public health, safety, and welfare. Moreover, the citizens of Houston have expressed the desire to increase the number of smoke-free indoor establishments. As such, the ordinance may reflect the public interest, as expressed to the Houston City Council members. Finding of Fact 13.

32. Plaintiffs have not shown that the harm they would suffer greatly outweighs the harm that the injunction may cause the City of Houston and its citizens. As noted above, on one hand, Plaintiffs suffer speculative economic harm. Findings of Fact 30–31, 35–38. On the other hand, Defendant offers studies that show both that Plaintiffs will not be harmed economically, and that the health of the citizens of Houston will be detrimentally affected in ways perhaps beyond repair. Findings of Fact 29, 39, 41–43.

## CONCLUSION

The court denied Plaintiffs' request for a preliminary injunction on August 27, 2007, thus allowing the City of Houston to enforce Ordinance 2006-1054, which will become effective on September 1, 2007, based on the Findings of Fact and Conclusions of Law set out here.

Signed at Houston, Texas on August 30, 2007.

_____
Gray H. Miller
United States District Judge